1  James E. Doroshow (SBN 112920)
       jdoroshow@foxrothschild.com
2  Ashe Puri (SBN 297814)
       apuri@foxrothschild.com
3  FOX ROTHSCHILD LLP
   1800 Century Park East, Suite 300
4  Los Angeles, CA 90067-1506
   Telephone:  310-598-4150
5  Facsimile:   310-556-9828

6  Attorneys for Defendants,
   RARE EDITIONS, JC PENNEY COMPANY, INC., DILLARD'S, INC., LORD &
7  TAYLOR, LLC, STAGE STORES, INC., AND THE TJX COMPANIES

8                UNITED STATES DISTRICT COURT

9                CENTRAL DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11 NA EL, INC., a California Corporation, | Case No.: CV-14-00001-CAS-AJW |
| 12           Plaintiff, | Hon. Judge Christina A. Snyder |
| 13           v. | **NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT IN RECENTLY FILED CASE NO. CV-15-00848 AND TO IMPOSE MONETARY SANCTIONS AGAINST PLAINTIFF AND ITS COUNSEL; OR, IN THE ALTERNATIVE, TO CONSOLIDATE CASE NOS. CV-14-00001 AND CV-15-00848 AND TO VACATE THE EXISTING PRETRIAL AND TRIAL DATES IN CASE NO. CV-14-00001** |
| 14 JC PENNEY COMPANY, INC., a Texas Corporation; RARE EDITIONS, a New | |
| 15 York Business of Form Unknown; RARE EDITIONS FOR GIRLS, a New York | |
| 16 Business of Form Unknown; and DOES 1-10, inclusive, | |
| 17           Defendants. | |
| 18 | |
| 19 | |
| 20 | **FILED ON BEHALF OF DEFENDANTS RARE EDITIONS, JC PENNEY COMPANY, INC., DILLARD'S, INC., LORD & TAYLOR, LLC, STAGE STORES, INC. AND THE TJX COMPANIES** |
| 21 | |
| 22 | |
| 23 | **DECLARATION OF ASHE P. PURI AND [PROPOSED] ORDER SUBMITTED UNDER SEPARATE COVER** |
| 24 | |
| 25 | |
| 26 | Date:              3/23/15 |
| 27 | Time:            10 a.m. <br> Dept:             5, 2nd Floor |
| 28 | Complaint filed:   1/2/14 |

MOTION TO DISMISS

ACTIVE 29011784v5 02/23/2015

| | |
|---|---|
| NA EL, INC., a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>SANA FABRICS, INC., a California Corporation; ADLI SALES, a Texas Business of Form Unknown; AMAZON.COM, INC., a Washington Corporation; APEX TRANSPORTATION, LLC, a North Carolina Limited Liability Company; ASOH ENYINNAYA, a New Jersey Business of Form Unknown; BEALL'S, INC., A Florida Corporation d/b/a BEALL'S OUTLET; BELK, INC., a North Carolina Corporation; BELLA PARIS BOUTIQUE, LTD., a Pennsylvania Corporation; BERTA STORES, INC., a New York Corporation; BUBBY BUMS CHILDREN'S BOUTIQUE, a Texas Business of Form Unknown; CALANO & CO., a Florida Business of Form Unknown; CHRISTENSEN'S DEPARTMENT STORE, a Utah Business of Form Unknown; CONTINENTAL COMPLEX LIMITED, a New York Business of Form Unknown; DILLARD'S INC., an Arkansas Corporation; THE GLASS BUTTERFLY, LTD., an Oregon Corporation; GLOBAL TRANTEX, a New York Business of Form Unknown; GOLDEN RULE, INC., a North Dakota Corporation; GOSHOPUSA, a Florida Business of Form Unknown; GTNN, LLC, a New York Limited Liability Company; HAPPY PEOPLE SHOP, a Florida Business of Form Unknown; HHH INVESTMENTS CORPORATION, a Texas Corporation; HOUSE OF BEAULAH, a Georgia Business of Form Unknown; INSPIRATION CHILD, a Texas Business of Form Unknown; JACMO CHILDREN'S WEAR, INC., a Florida Corporation; JBG INVESTMENTS, LTD., a Michigan Corporation; JULIA'S, a Florida Business of Form Unknown; JUST KIDS, a South Carolina Business of Form Unknown; KRF GROUP, LLC, a Florida Limited Liability Company; KOHL'S CORPORATION, a Wisconsin Corporation; LAPARKAN PRO | Case No.: CV-15-00848-PJW<br><br>Hon. Magistrate Judge Patrick J. Walsh<br><br>Date:        3/25/15<br>Time:        11 a.m.<br>Dept:        23<br><br>Complaint filed:    2/5/15 |

MOTION TO DISMISS

ACTIVE 29011784v5 02/23/2015

SYSTEM, INC., a Florida Corporation;
LOLIQUE INTERNATIONAL
VENTURE, a Maryland Business of Form
Unknown, LORD & TAYLOR, LLC, a
New York Limited Liability Company;
MACY'S, INC., an Ohio Corporation;
MODECRAFT, INC., a New Jersey
Corporation d/b/a BURLINGTON COAT
FACTORY; MY CUTIE, INC., a
Wyoming Corporation; NORA
MICHAEL'S EXPORTS, a California
Business of Form Unknown; OAU
ENTERPRISES, LLC, a Georgia Limited
Liability Company; PBA GROUPS, LLC,
a Florida Limited Liability Company;
RICH-HILLS CORPORATION, a Florida
Corporation; SHOWME BARGAINS,
LLC, a Missouri Limited Liability
Company; SIMONE'S PLACE, INC., a
New York Corporation;
SOPHIASSTYLE.COM, INC., a Nebraska
Corporation; STAGE STORES, INC., a
Texas Corporation; STAR EXCHANGE,
LLC, a Missouri Limited Liability
Company; TENACIOUS CLOTHING
BOUTIQUE, a Utah Business of Form
Unknown; THE TJX COMPANIES, INC.,
a Massachusetts Corporation d/b/a TJ
MAXX; TREASURELAND FOR KIDS,
LLC, a Georgia Limited Liability
Company; TRENDY KIDS BOUTIQUE,
a Tennessee Business of Form Unknown;
TRINITY MART, a Delaware Business of
Form Unknown; VON MAUR, INC., an
Iowa Corporation; ZEKOV, INC., a
Florida Corporation; ZULILY, INC., a
Washington; and DOES 1-10,

                    Defendants.

ACTIVE 29011784v5 02/23/2015

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that, on March 23, 2015, at 10 a.m. in the Courtroom of the Honorable Christina A. Snyder, United States District Court Judge, or, as the Court directs, on March 25, 2015, at 11 a.m. in the Courtroom of the Honorable Magistrate Judge Patrick J. Walsh, Defendants Star Children's Dress Co., Inc. d/b/a Rare Editions, JC Penney Company, Inc., Dillard's, Inc., Lord & Taylor, LLC, Stage Stores, Inc. and The TJX Companies ("Defendants") will and hereby do move this Court for an Order to Dismiss Recently Filed Case No. CV-15-00848 and to Impose Monetary Sanctions Against Plaintiff Na El, Inc. and its Counsel.   In the Alternative, in the event the Court denies the Motion to Dismiss, Defendants hereby move to Consolidate Case Nos. CV-14-00001 and CV-15-00848 and to Vacate the Existing Pretrial and Trial Dates in Case No. CV-14-00001.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on February 10, 2015 and February 12, 2105.  *See* Declaration of Ashe P. Puri at ¶¶ 2-6.

This Motion is based upon this Notice of Motion, the attached Memorandum of Points and Authorities, the attached Declaration of Ashe Puri, Esq., the complete record in this action, and any further evidence that may be presented or adduced prior to or at the hearing of this Motion.

Dated:  February 23, 2015                 FOX ROTHSCHILD LLP

                             By   */s/ James E. Doroshow*
                                  James E. Doroshow
                                  Ashe Puri
                                  Attorneys for Defendants,
                                  RARE EDITIONS, JC PENNEY
                                  COMPANY, INC., DILLARD'S, INC.,
                                  LORD & TAYLOR, LLC, STAGE STORES,
                                  INC., AND THE TJX COMPANIES

---

MOTION TO DISMISS

ACTIVE 29011784v5 02/23/2015

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION..................................................................................1

II.  PROCEDURAL BACKGROUND...........................................................3

   A.   The *Na El I* Action............................................................................3

      1.   The Complaint.............................................................................3

      2.   The Case Management Order......................................................4

      3.   Na El's *Na El I* Discovery And Knowledge Of All Defendants Now Named In *Na El II*.........................................................................5

   B.   The *Na El II* Action...........................................................................6

III. ARGUMENT........................................................................................7

   A.   Plaintiff's Second Complaint Is An Improper Attempt To Split Its Claims....7

      1.   Same Causes Of Action..............................................................9

      2.   The Relief Sought In *Na El I* and *Na El II* Is Identical............12

      3.   Same Parties Or Their Privies....................................................12

   B.   Dismissal With Prejudice Also Promotes Judicial Economy And The Comprehensive Disposition Of Litigation..........................................13

   C.   Na El And Its Attorneys Should Also Be Sanctioned For Filing Duplicative Lawsuits....15

IV.  ALTERNATIVELY, THE COURT SHOULD CONSOLIDATE *NA EL I* AND *NA EL II* AND VACATE THE TRIAL SCHEDULE IN *NA EL I*..................17

V.   CONCLUSION...................................................................................19

1
2

## **TABLE OF AUTHORITIES**

3
**Page(s)**

4
**Cases**

5
6
*Adams v. State of CA Dept. of Health Servs.*,
   487 F.3d at 688 .......................................................................*passim*

7
8
*B.K.B. v. Maui Police Dep't,*
   276 F.3d 1091 (9th Cir. 2002) .......................................................15

9
10
*C.D. Anderson & Co., Inc. v. Lemos,*
   832 F.2d 1097 (9th Cir. 1987) .......................................................10

11
12
*Chambers v. NASCO,*
   501 U.S. 32 (1991)........................................................................16

13
*Clements v. Airport Auth. Of Washoe County,*
   69 F.3d 321 (9th Cir. 1995) .............................................................7

14
15
*Cook v. C.R. England,*
   CV 12-3515, 2012 WL 2373258 (C.D. Cal. 2012) ...............................8, 9

16
17
*Dusky et al. v. Bellasaire Investments, et al.,*
   Civ. No. 07-874, 2007 WL 4403985 (C.D. Cal. 2007) ..........................18

18
19
*Fink v. Gomez,*
   239 F.3d 989 (9th Cir. 2001) .........................................................15

20
21
*In re Girardi,*
   611 F.3d 1027 (9th Cir. 2010) .....................................................15, 16

22
23
*Investors Research Co. v. United States Dist. Court for the Central Dist.*
   *Of California,*
   877 F.2d 777 (9th Cir. 1989) .........................................................18

24
25
*Katz v. Gerardi,*
   655 F.3d 1212 (10th Cir. 2011) ....................................................8, 13

26
27
*Klauber Bros., Inc. v. J.C. Penney Co., Inc. et al.,*
   Case No. 2:15-cv-00621 (C.D.Cal.) ................................................17

28

MOTION TO DISMISS
ii

*Moore v. Keegan Management Co.*,
    78 F.3d 431 (9th Cir. 1996) ....................................................................15

*Na El, Inc. v. JC Penney Company, Inc.*,
    Case No. 14-cv-00001-CAS-AJW (C.D.Cal.)...............................*passim*

*Na El, Inc. v. Sana Fabrics, Inc. et al.*,
    Case No. 2:15-CV-00848-PJW (C.D.Cal.)......................................*passim*

*New Alaska Dev. Corp. v. Guetschow*,
    869 F.2d 1298 (9th Cir. 1989) ...............................................................15

*Unicolors, Inc. v. Macy's Inc. et al.*,
    14-cv-08611-RGK-SS .....................................................................3, 17

*Unicolors, Inc. v. Macy's Inc. et al.*,
    14-cv-08611-RGK-SS (C.D.Cal.) ........................................................17

**Statutes**

17 U.S.C. § 106(2) ......................................................................1, 3, 18

28 U.S.C. § 1927 .........................................................................15, 16

Copyright Act, 17 U.S.C. § 101 *et seq.* ..................................................12

**Other Authorities**

*Fed. R. Civ. P. 42(a)* ...............................................................................18

*Fed. R. Civ. P. 15* ...................................................................................14

## I.    **INTRODUCTION.**

On February 5, 2015, Plaintiff Na El, Inc. ("Na El") filed a Complaint against fifty-one (51) customers of Defendant Star Children's Dress Co., Inc. d/b/a Rare Editions ("Rare Editions").   Exactly as it had done with Rare Editions thirteen months earlier in Case No. CV-14-00001-CAS-AJW, Na El accused these 51 new defendants of copyright infringement, vicarious and/or contributory copyright infringement and violation of 17 U.S.C. § 106(2) in a second lawsuit entitled *Na El, Inc. v. Sana Fabrics*, *Inc. et al.*, Case No. 2:15-CV-00848-PJW (C.D.Cal.) ("*Na El II*").   As with its initial lawsuit against Rare Editions, the accused products in *Na El II* relate to the exact same garments sold by Rare Editions which Na El alleges are infringed in its first lawsuit.   At the same time, in addition to suing 51 of Rare Edition's customers, the Complaint in *Na El II* also names Sana Fabrics, Inc. ("Sana Fabrics") as a defendant.   Sana Fabrics designed the accused products which, in turn, were sold to Rare Editions.

The Complaint in *Na El II* is identical to the Complaint filed by Na El in its initial lawsuit against Rare Editions and others entitled *Na El, Inc. v. JC Penney Company, Inc.*, Case No. 14-cv-00001-CAS-AJW (C.D.Cal.) ("*Na El I*").   Both Complaints involve the same identical claims, and the same accused product.   The only difference between the two actions is the parties.   While Na El is the same Plaintiff in both actions, the only difference is the Defendants.   In fact, the only difference between the two Complaints is that the DOE Defendants named in the Complaint filed in *Na El I* are identified by their actual names in *Na El II*.[1]   There is no question the Complaints in both actions are identical.   In fact, Na El itself acknowledges that both Complaints are the same.   On February 13, 2015, Na El filed a Notice of Related Case in *Na El I* and *Na El II* **acknowledging that the legal and**

---

[1] The deadline for adding parties in *Na El I* was July 18, 2014.  While deliberately ignoring this deadline for seven (7) months, Na El has now instead chosen to impermissibly split its claims and file a new lawsuit thirteen months after filing *Na El I*, and on the eve of an April 21, 2015 trial in *Na El I*.

factual allegations in the *Na El II* Complaint are "identical" to the allegations in the *Na El I* Complaint. *See* Dkt No. 8 (Notice of Related Case) (*Na El I*); Dkt. No. 46 (Notice of Related Case) (*Na El II*).

Clearly, Na El has now belatedly filed a second lawsuit in *Na El II* to try to avoid the consequences of its failure to name additional defendants in *Na El I*. It also is now trying to circumvent the Court's case scheduling order in *Na El I* imposing a July 18, 2014 deadline to add new parties. Na El has known about the identity and names of all of Rare Editions' customers no later than September 5, 2014, the date when Rare Editions produced documents to Na El identifying its customers. Na El has also known about the involvement of Sana Fabrics as the designer and supplier of the accused products no later than July 9, 2014, the date when Rare Editions served its answers to Na El's interrogatories. Despite this knowledge, Na El deliberately ignored this information and the ability to add new defendants in the first lawsuit until shortly before discovery closed in *Na El I* on February 13, 2015. Instead, having sat on its rights for over a year, Na El has now proceeded to file a duplicate second lawsuit in *Na El II* on February 5, 2015 naming Sana Fabrics and the same customers that Rare Editions disclosed to Na El *five months earlier* in *Na El I*.

Na El's belated, second Complaint in *Na El II* is of course wholly improper. First, by filing duplicate lawsuits involving the same identical products and claims, Na El has engaged in claim splitting, a practice that is prohibited in the Ninth Circuit. Second, by its late filing, Na El is trying to use a second lawsuit as a means of forcing Rare Editions to either settle meritless claims or spend an enormous amount of time and money defending duplicate lawsuits involving the exact same factual and legal issues with different pretrial and trial schedules. Regrettably, this is not the first time Plaintiff's counsel has engaged in such abusive conduct. In fact, such abusive tactics appear to be a recurring practice of Na El's counsel, The Doniger Law Firm, which have been used to subject others to defend successive duplicate lawsuits in this District. In fact, this exact same claim-splitting practice by the Doniger Firm is

currently the subject of a motion to dismiss and for sanctions in another action pending in this District entitled *Unicolors, Inc. v. Macy's Inc. et al.*, 14-cv-08611-RGK-SS (Dkt. No. 108).  *See* Declaration of Ashe P. Puri ("Puri Decl.") at ¶ 7, Ex. E.

The *Na El II* lawsuit should be dismissed by this Court because of Plaintiff's improper claims splitting.  At the same time the Court dismisses *Na El II,* it should also award Defendants their fees and costs unnecessarily incurred to have to prepare and file this Motion to Dismiss.  In the alternative, in the unlikely event the Court declines to dismiss the Complaint in *Na El II*, Defendants respectfully request that the Court consolidate *Na El I* and *Na El II*; and vacate the current pretrial and trial schedule in *Na El I* so that both actions can proceed on the same pretrial and trial schedule without forcing Defendants to defend duplicate lawsuits involving the same factual and legal issues.

## II.   PROCEDURAL BACKGROUND.

### A.   The *Na El I* Action.

#### 1.   The Complaint.

On January 2, 2014, Na El filed its initial Complaint in this Court against Rare Editions, JC Penney Company, Inc. ("JC Penney") and DOES 1-10 for copyright infringement, vicarious and/or contributory copyright infringement and alleged violation of 17 U.S.C. § 106(2).  *See* Dkt. No. 1 (Complaint) (*Na El I*).  Significantly, NA El's Complaint in *NA El I* defines DOES 1-4 as "manufacturers, and/or vendors … of garments to Defendant, which DOE Defendants have manufactured and/or supplied and are manufacturing and/or supplying fabrics and other product printed with Plaintiff's copyrighted design …."  The Complaint also defines DOES 5-10 as including retail stores and other Rare Editions' customers.  Specifically, according to the Complaint:

> "Defendants DOES 5 through 10, inclusive, are other parties not yet identified who have infringed Plaintiff's copyrights, have contributed to the infringement of Plaintiff's copyrights, or have engaged in one or

1    more of the wrongful practices alleged herein, including but not limited
2    *to retail stores and others who have sold the garments at issue in this*
3    *case.*"

4   *Id.* at ¶ 10 (emphasis added).

5          In terms of the accused product in *Na El I*, the Complaint alleges that Na El
6   published and offered for sale a taffeta with patch flower and sequence, that is entitled
7   "NA 7068/7068A" (the "Subject Design").   *See id.* at ¶ 12.   According to Na El, the
8   Subject Design was submitted for registration with the United States Copyright Office
9   prior to the time the Complaint was filed.   *See id.* at ¶ 13.   The Complaint further
10  alleges that "[a]fter offering for sale the Subject Design, Plaintiff discovered that JC
11  PENNEY was importing, distributing, and/or selling for profit garments which
12  infringed the Subject Design (hereinafter 'Accused Product')."  *See id.* at ¶ 14.   The
13  Complaint also alleges that "[i]nvestigation revealed that the Accused Products had
14  been provided to JC Penney by RARE EDITIONS."   *See id.* at ¶ 15.   Finally, the
15  Complaint alleges "[o]n information and belief . . . that RARE EDITIONS obtained
16  the Accused Products, and/or components thereof, from certain DOE Defendants, and
17  sold the Accused Products to JC Penney and certain DOE Defendants."   *See id.* at ¶
18  16.

19                    **2.     The Case Management Order.**

20         On May 12, 2014, this Court (the Honorable Christina A. Snyder) held a
21  scheduling conference in *Na El I*.  *See* Dkt. No. 21 (*Na El I*).  At that time, the Court
22  set the following pretrial and trial deadlines in *Na El I*:

23   •   **Request for leave to file amended pleadings or to add parties:  July**
24       **18, 2014**

25   •   Discovery Cut-off:  February 13, 2015;

26   •   Settlement Completion Cut-off:  January 9, 2015;

27   •   Last Day to File Motions:  February 27, 2015;

28   •   Status Conference re:  Settlement (11:00 A.M.):  January 26, 2015 [sic];

- Pretrial Conference/Hearing on Motions In Limine (11:00 A.M.):  April 13, 2015; and

- Jury Trial (9:30 A.M.):  April 21, 2015 (emphasis supplied).

### 3.   Na El's *Na El I* Discovery And Knowledge Of All Defendants Now Named In *Na El II*.

On April 21, 2014, having waited over four and a half months after filing its original Complaint in *Na El I* to commence discovery, Na El served its initial written discovery on Rare Editions consisting of a first set of document requests and a first set of interrogatories.  *See* Puri Decl. at ¶¶ 8, 9.  As part of this initial discovery, the first set of document requests requested documents identifying the names of Rare Editions' customers.  *See* Puri Decl. at ¶ 8.  (First Set of Requests for Production, Nos. 23 and 28).  Additionally, Plaintiff's first set of interrogatories requested the name of any person from whom Rare Editions "obtained [the] SUBJECT DESIGN."  *See* Puri Decl. at ¶ 9 (Interrogatory No. 3).[2]

On July 10, 2014, Rare Editions served its objections and responses to Na El's document requests and interrogatories.  *See* Puri Decl. at ¶¶ 10, 11.  In its response to the interrogatories, Rare Editions clearly identified the manufacturer of the Accused Products by stating that it had "purchased textiles with the accused design from Sana Fabrics Inc."  *See* Puri Decl. at ¶ 11 (Response to Interrogatory No. 3).  Thereafter, on September 5, 2014, Rare Editions produced documents to Na El identifying the names of all of its customers, including each of the parties now belatedly named as defendants in *Na El II*.  *See* Puri Decl. at ¶ 12 (Email from K. Schachter to T. Barrett dated September 5, 2014).[3]

---

[2]  Na El defined SUBJECT DESIGN in its first set of interrogatories as "the design accused of infringing PLAINTIFF'S DESIGN in the operative Complaint, including but not limited to the design appearing on the garments sold by RESPONDING PARTY and any other garments identified by any other party in this action."  *Id.*

[3]  Rare Editions produced to Na El its documents identifying its customers as confidential and highly confidential-outside attorneys' eyes only under the terms of the parties' protective order.  Copies of these documents can be made available for in-

1

### B.    The *Na El II* Action.

2     On February 5, 2015, having failed to name Rare Editions' manufacturer and

3 customers in *Na El I*, Na El filed a Complaint in *Na El II* naming Sana Fabrics and

4 fifty-one (51) of Rare Editions' customers as Defendants.  *See* Dkt. No. 1 (Complaint)

5 (*Na El II*).  **This second lawsuit was filed five months after the date that Rare**

6 **Editions disclosed the names of its customers to Na El and nearly seven months**

7 **after the date that Rare Editions disclosed Sana Fabrics as the designer and**

8 **supplier of the Accused Products.**  At the same time, the Complaint in *Na El II* is

9 identical to the Complaint filed in *Na El I* **over thirteen months earlier**.  **They both**

10 **involve the same identical claims and same factual and legal issues involving the**

11 **same identical Accused Product**.  *See id.* at ¶¶ 64-68.  The only difference between

12 the two Complaints is that the Doe Defendants in *Na El I* have now finally been

13 identified by their true names in *Na El II*.

14     Seeking to hide their nonfeasance in filing a second lawsuit, Plaintiff and its

15 counsel failed to file a Notice of Related Case when they filed their Complaint in *Na*

16 *El II* on February 5, 2015.  In fact, it was only after defense counsel asked that the

17 Doniger Firm file a Notice of Related Case in *Na El II* that counsel finally did so one

18 week later, on February 13, 2015.  *See* Dkt. No. 46 (Notice of Related Case) (*Na El*

19 *II*); *see also* Dkt No. 8 (Notice of Related Case) (*Na El I*); Puri Decl. at ¶¶ 13, 14.  As

20 Plaintiff and its counsel concede, the late-filed Notice of Related Case openly

21 acknowledges that the factual allegations and legal issues raised in the Complaint in

22 *Na El II* are identical to the factual allegations and legal issues raised in the Complaint

23 in *Na El I*.  Thus, as stated in Plaintiff's Notice of Related Case, "[a]n examination of

24 the operative complaints for the Related Cases reveals that the factual allegations and

25 legal issues are, for all intents and purposes, *identical* – although involve different

26 claims against different parties."  *See id.* (emphasis added).

27

28 camera review by the Court upon the Court's request.  Rare Editions will also bring a
copy of these production documents at the hearing for Defendants' Motion to Dismiss.

MOTION TO DISMISS

6

The Notice of Related Case further acknowledges that the Complaints in *Na El I* and *Na El II* involve allegations of infringement involving the same alleged copyright. *See id.* Thus, according to the Notice of Related Case, "[d]uring the course of discovery, Plaintiff determined that the Related Cases involve allegations of infringement of the **same copyright** through the unauthorized manufacture, reproduction, distribution, and offering for sale of infringing fabric or complete garments made from such fabric (collectively, the 'Subject Product') by Defendant Sana Fabrics, Inc. ('Sana'), and the resale and distribution of Subject Product by Sana's customers and their customers in the stream of commerce. Each of the additionally named defendants are either direct purchasers of Subject Product from Sana's known customer Star Children's Dress Co., d/b/a/ 'Rare Editions', downstream purchasers of the Subject Product, and Sana itself." *Id.* (emphasis added).[4]

## III.   ARGUMENT.

### A.   Plaintiff's Second Complaint Is An Improper Attempt To Split Its Claims.

A plaintiff has no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same parties or privies. *Adams v. State of CA Dept. of Health Servs., supra* 487 F.3d at 688. This rule, known as the prohibition against claim-splitting, is designed to protect the "defendant from being harassed by repetitive actions based on the same claim" *Clements v. Airport Auth. Of Washoe County*, 69 F.3d 321, 328 (9th Cir. 1995). Its application "protects the parties from vexatious and expensive litigation and serves the societal interest of bringing an end to disputes." *Adams v. State of CA Dept. of Health Servs., supra*, 487 F.3d at 688 (*citing Allen v. McCurry*, 449 U.S. 90, 94 (1980) [relieves parties of cost of multiple lawsuits, conserves judicial resources, and encourages reliance on adjudication]). In addition, the claim-splitting rule "exists to

---

[4] The recently-filed *Na El II* action has yet to be assigned to a District Court Judge. Therefore, Defendants have presently noticed this Motion for hearing before Magistrate Walsh in the event Judge Snyder's declines to hear it.

1  allow district courts to manage their docket and dispense with duplicative litigation."
2  *Katz v. Gerardi*, 655 F.3d 1212, 1218-19 (10th Cir. 2011).[5]

3      To determine whether a suit is duplicative for purposes of claim-splitting, the
4  Ninth Circuit borrows from the test for *res judicata* or claim preclusion.  Under that
5  test, the Court examines whether the causes of action and relief sought, as well as the
6  parties or privies to the action, are the same.  *Adams v. State of CA Dept. of Health*
7  *Servs., supra*, 487 F.3d at 689.

8      Here, the causes of action and privies are the same in both cases, and the
9  prohibition against claim-splitting applies to protect Defendants from the harassing
10  and vexatious need to simultaneously defend against two lawsuits arising out of the
11  same alleged facts and purported harm.  Like the Plaintiff in *Katz*, Plaintiff's "related
12  claims must be brought in a single action.  Plaintiff's complaint must be dismissed in
13  order to preclude Plaintiff from "improperly splitting claims that should have been
14  alleged in the earlier [*Unicolors I*] action."  *Katz v. Gerardi, supra*, 655 F.3d at 1212.

15      If Plaintiff is allowed to proceed with duplicative litigation, it will result in
16  enormous prejudice to Rare Editions and to the Downstream Retail Defendants, and
17  will unnecessarily waste judicial resources.  As of January 28, 2015, six (6) of the
18  Downstream Retailer defendants have demanded that Rare Editions indemnify and
19  defend them against Plaintiff's claims in the new *Na El II* lawsuit.  (Puri Decl., ¶ 19).
20  Rare Editions has an alleged contractual and statutory duty to indemnify all of the
21  Downstream Retailer Defendants in both actions.  As Plaintiff well knows and
22  undoubtedly has calculated, indemnifying the Downstream Retailer Defendants in *Na*

23  ----
24  [5] "The doctrine of claim-splitting is the notion that a party is 'not at liberty to split up
25  his demand, and prosecute it by piecemeal, or present only a portion of the grounds
   upon which relief is sought, and leave the rest to be presented in a second suit, if the
   first fail.  There would be no end to litigation is such a practice were permissible.'"
26  *See Cook v. C.R. England*, CV 12-3515 (CWx), 2012 WL 2373258, at *3 (C.D. Cal.
   2012) (quoting *United States v. Haytian Republic*, 154 U.S. 118, 125 (1894)).  "The
   ultimate objective of this rule against claim-splitting is to 'protect the Defendant from
27  being harassed by repetitive actions based on the same claim' and to promote judicial
   economy and convenience."  *See id.* (quoting *Clements v. Airport Auth. of Washoe*
28  *Cnty.*, 69 F.3d 321, 328 (9th Cir. 1995)); *see also Adams v. Cal. Dept. of Health*
   *Services*, 487 F.3d 684, 688-89 (9th Cir. 2007).

MOTION TO DISMISS
8

*El II* while simultaneously defending itself against the same claims in *Na El I* will place a colossal unfair financial burden on Rare Editions.

Here, the first question a District Court must ask is whether the second lawsuit is duplicative of the first lawsuit.  *Cook*, 2012 WL 2373258, at *4.  In determining whether a suit is duplicative, the causes of action and relief sought, as well as the parties or privies to the action, should be determined to be the same.  *See Adams*, 487 F.3d at 689 (9th Cir. 2007).  If the court determines that the second lawsuit is duplicative of the first lawsuit, and therefore constitutes clam-splitting, the Court may "exercise its discretion to dismiss a duplicative later filed action."  *See id.; Cook*, 2012 WL 2373258, at *4.  Here, as Plaintiff itself readily concedes, there is no question *Na El II* is duplicative of *Na El I* and therefore should be dismissed.

### 1.    Same Causes Of Action.

To determine whether successive causes of action are the same, the United States Court of Appeals for the Ninth Circuit ("Ninth Circuit") has applied the "transaction test," developed in the context of claim preclusion.  *See Adams*, 487 F.3d at 689.  According to the Ninth Circuit, "whether two events are part of the same transaction or series depends on whether they are related to the same set of facts and whether they could conveniently be tried together." *See id.* (*quoting Western Sys., Inc. v. Ulloa*, 958 F.2d 864, 871 (9th Cir. 1992)).  In applying the transaction test, four elements are considered:

> (i) whether the rights or interests established in a prior judgment would be destroyed or impaired by prosecution of the second action; (ii) whether substantially the same evidence is presented in the two actions; (iii) whether the two suits involve infringement of the same right; and (iv) whether the two suits arise out of the same transactional nucleus of facts.

*See id.* (*quoting Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201-2 (9th Cir. 1982)).  According to the Ninth Circuit, "[t]he last of these criteria is the most

1  important." *Id.; see also C.D. Anderson & Co., Inc. v. Lemos*, 832 F.2d 1097, 1100

2  (9th Cir. 1987) (holding that second suit was barred solely because it arose out of the

3  same transactional nucleus of facts as the first suit).   All four requirements are

4  unquestionably met here:

5           (a)      **The Rights And Interests Established In *Na El I* Would**

6                    **Be Destroyed Or Impaired By Prosecution Of *Na El II.***

7           The central issue in *Na El II* – whether certain garments bearing a specific

8  textile design infringe Na El's alleged copyright – is the same exact issue that has

9  been raised in *Na El I.*  As discussed in Sections II.A. and II.B. above, the Complaints

10  filed in *Na El I* and *Na El II* accuse the same exact garments sold by Rare Editions of

11  copyright infringement.  If Na El fails to establish in *Na El I* that these garments

12  infringe its alleged copyright, there should not be a second proceeding or trial

13  subjecting Rare Editions' customers or its supplier Sana Fabrics to potential liability

14  for copyright infringement in *Na El II.*  Consequently, a judgment against Na El in *Na*

15  *El I* could be impaired or destroyed if Na El were permitted to relitigate its claims in

16  *Na El II* against Rare Editions' customers and its supplier involving the same

17  garments in a second lawsuit.

18           (b)      **The Claims In *Na El I* And *Na El II* Are Based On The**

19                    **Same Evidence.**

20           Na El's claims in *Na El II* depend upon the same exact evidence that Na El will

21  present at trial in *Na El I.*  Thus, based on the identical allegations included in the

22  Complaints in *Na El I* and *Na El II*, Na El will undoubtedly present the same evidence

23  at trial that: (i) it holds a valid and enforceable copyright; and (ii) the Accused Product

24  infringes Na El's alleged copyright.  Likewise, both set of Defendants would be

25  presenting the same evidence at trial in *Na El I* and *Na El II* including, among other

26  things, that:  (i) Na El does not own a valid or enforceable copyright; (ii) that the

27  design of the Accused Product is neither the same nor substantially similar to the

28

purportedly copyrighted design; (iii) Defendants had no access to the purportedly copyrighted design; and (iv) there is an absence of any willful conduct.

### (c)   *Na El I* And *Na II* Involve Alleged Infringement Of The Same Right.

Furthermore, as discussed in Section II.A.1 above, the Complaints filed in *Na El I* and *Na El II* involve alleged infringement of the same alleged copyright with respect to a taffeta with patch flower and sequence, entitled "NA 7068/7068A."  *See* Dkt. No. 1 (Complaint) (*Na El I*) at ¶¶ 12, 14; Dkt. No. 1 (Complaint) (*Na El II*) at ¶¶ 62, 64.  In fact, as shown, the Notice of Related Case filed by Na El in *Na El II* clearly acknowledges that the same alleged copyright is at issue in both the *Na El I* and *Na El II* actions.  Thus, according to the Notice of Related Case (Dkt. No. 46) (*Na El I*):

"[d]uring the course of discovery, Plaintiff determined that the Related Cases involve allegations of infringement of the *same* copyright through the unauthorized manufacture, reproduction, distribution, and offering for sale of infringing fabric or complete garments made from such fabric (collectively, the "Subject Product") …."  (emphasis added).

### (d)   *Na El I* And *Na El II* Arise Out Of The Same Transactional Nucleus Of Facts.

The Complaints in *Na El I* and *Na El II* also share identical factual allegations and issues.  As further described in Sections II.A. and II.B. above, both Complaints involve allegations of copyright infringement involving the same identical garments.  *See also* Dkt. No. 1 (Complaint) (*Na El I*) at ¶¶ 14-18; Dkt. No. 1 (Complaint) (*Na El II*) at ¶¶ 64-68.   Consequently, any factual disputes arising over whether these garments infringe will be identical in both actions.

Also, in case there was any doubt on this subject, the Notice of Related Case (Dkt. No. 46) (*Na El II*) filed by Na El in *Na El II* again acknowledges that the Complaints in *Na El I* and *Na El II* contain "identical" factual and legal allegations.  According to the Notice of Related Case (Dkt. No. 46) (*Na El I*):

ACTIVE 29011784v5 02/23/2015

"[a]n examination of the operative complaints for the Related Cases reveals that the *factual allegations and legal issues* are, for all intents and purposes, *identical*, although involve different claims against different parties." (emphasis added).

### 2.   The Relief Sought In *Na El I* and *Na El II* Is Identical.

The Relief sought in the Complaints filed in *Na El I* and *Na El II* is also identical. Both Complaints request: (a) "[t]hat Defendants, their agents and employees be enjoined from infringing Plaintiff's copyrights in any manner, specifically those for the Subject Design an injunction against any future sales of the accused garments"; (b) "[t]hat Plaintiff be awarded all profits of Defendants plus all losses of Plaintiff, plus any other monetary advantage gained by Defendants through their infringement, the exact sum to be proven at the time of trial, or, if elected before final judgment, statutory damages as available under the Copyright Act, 17 U.S.C. § 101 *et seq.*"; (c) "[t]hat Plaintiff be awarded its attorneys' fees as available under the Copyright Act U.S.C. § 101 *et seq.*"; (d) "[t]hat Plaintiff be awarded pre-judgment interest as allowed by law"; (e) "[t]hat Plaintiff be awarded the costs of this action; (f) "[t]hat a constructive trust be imposed over the product at issue, and any profits derived from the sales thereof"; and (g) "[t]hat Plaintiff be awarded such further legal and equitable relief as the Court deems proper." *Compare* Dkt. No. 1 (Complaint) (*Na El I*) at p. 11-12 *with* Dkt. No. 1 (Complaint) (*Na El II*) at pp. 20-21.

### 3.   Same Parties Or Their Privies.

According to the Ninth Circuit, "[a]lthough the concept of privity traditionally applied to a narrow class of relationships in which 'a person [is] so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved,' we have expanded the concept to include a broader array of relationships which fit under the title of 'virtual representation.'" *See Adams*, 487 F.3d at 691. The Ninth Circuit has defined the elements of virtual representation as "identity of interests and adequate representation." *See id.*

According to the Ninth Circuit, "[a]dditional features of a virtual representation relationship include 'a close relationship, substantial participation, and tactical maneuvering.'" *See id.*

While the Complaint filed in *Na El II* names fifty-two (52) additional Defendants, these new Defendants are clearly in privity with Rare Editions. As discussed in Section II above, among these fifty-two Defendants, fifty-one of them are customers of Rare Editions and thus unquestionably have a close relationship with Rare Editions. Moreover, the interests of these Defendants are aligned with Rare Editions because the claims asserted against them are predicated on garments that Rare Editions sold them. Tellingly, four of the named Defendants in the *Na El II* have already retained Rare Editions' present counsel to defend them in the *Na El II* action, including Dillard's, Inc., Lord & Taylor, LLC, Stage Stores, Inc. and The TJX Companies.

Sana Fabrics, the other named defendant in *Na El II*, is also in privity with Rare Editions. As discussed in Section II above, Rare Editions is a customer of Sana Fabrics and thus it too also has a close relationship with Sana Fabrics. Moreover, the interests of Sana Fabrics are aligned with Rare Editions because the claims asserted against Sana Fabrics involve the same garments sold by Sana Fabrics to Rare Editions.

### B.  Dismissal With Prejudice Also Promotes Judicial Economy And The Comprehensive Disposition Of Litigation.

By fragmenting its claims and litigating them piecemeal, Plaintiff "waste[s] scarce judicial resources and undermine[s] the efficient and comprehensive disposition of [its subject] cases." *Katz v. Gerardi, supra*, 655 F.3d at 1217. Since the rationale for the rule against claim-splitting is tied to the court's "broad discretion to control their dockets," this Court would "not abuse its discretion in electing to dismiss the [the subject action] with prejudice." *Adams v. State of CA Dept. of Health Servs., supra*, 487 F.3d at 692. "Dismissal of the duplicative lawsuit, more so than the

1  issuance of a stay or the enjoinment of proceedings, promotes judicial economy and

2  the 'comprehensive disposition of litigation.'" *Id.*, at 693 (*citing Ker test Mfg. v. C-O-*

3  *Two Fire Equip*, 342 U.S. 180, 183).

4         In *Adams*, the plaintiff filed her second action "in an attempt to avoid the

5  consequences of her own delay and to circumvent the district court's denial of her

6  untimely motion to amend her first complaint." *Adams v. State of CA Dept. of Health*

7  *Servs., supra*, 487 F.3d at 688.   The Ninth Circuit noted that the plaintiff "had

8  knowledge of the factual basis undergirding [her second complaint] when she filed the

9  complaint in the first action" yet failed to seek to amend her complaint in the first

10  action until "more than three months after the deadline set by the district court."   The

11  district court in the underlying *Adams* decision had held that the plaintiff failed to

12  show good cause for her failure to comply with the district court's scheduling order,

13  and determined that allowing [plaintiff] to amend her complaint after substantial

14  discovery had taken place would have prejudiced the defendants and caused undue

15  delay.   *Adams v. State Dep't of Health Servs, supra*, 487 F.3d at 693.

16         Like the plaintiff in *Adams*, Plaintiff filed the instant action in an attempt to

17  avoid the consequences of its own failure to diligently litigation *Na El I*.   However,

18  unlike *Adams*, the same facts and identical causes of action are alleged in both

19  complaints.    The only difference between the two complaints is the specific

20  identification by name of each of the Downstream Retailers and manufacturer in *Na*

21  *El II*, who are identified as "Doe" defendants in *Na El I*.   The respective identities of

22  51 of the Downstream Retailers were disclosed to Plaintiff in July of 2014 in response

23  to Plaintiff's **first** set of written discovery.

24         Unlike *Adams*, Plaintiff in this case never sought to amend its complaint in *Na*

25  *El I* to add those parties.   After apparently determining that it had waited too long

26  and/or that it did not wish to seek leave of the Court to amend the Complaint to

27  identify the Doe defendants, Plaintiff instead filed a second lawsuit.   In light of the

28  Ninth Circuit's "extremely liberal" policy of granting such relief under Rule 15, there

1   is no reason why such a request would have been denied, nor any excuse for
2   Plaintiff's failure to at least advance the request.

3       The facts in this case are far more compelling than those upon which the Ninth
4   Circuit relied in *Adams* in dismissing the action.  As with the district court in that
5   case, it is well within the sound discretion of this Court to assert control over its own
6   docket by ordering the dismissal of the instant Complaint with prejudice.

7                          *       *       *

8       Accordingly, for each of these reasons, Defendants respectfully request that the
9   Court dismiss the Complaint in the *Na El II* action.

10      **C.     Na El And Its Attorneys Should Also Be Sanctioned For Filing**
11      **Duplicative Lawsuits.**

12      Under 28 U.S.C. § 1927, an attorney "who so multiplies the proceedings in any
13  case unreasonably and vexatiously may be required by the court to satisfy personally
14  the excess costs, expense, and attorneys' fees reasonably incurred because of such
15  conduct."  *Ibid.*  "To be sanctionable under § 1927, therefore, counsel's conduct must
16  multiply the proceedings in both an 'unreasonable and vexatious manner.'"  *In re
17  Girardi*, 611 F.3d 1027, 1060-61 (9th Cir. 2010) (*quoting B.K.B. v. Maui Police Dep't*,
18  276 F.3d 1091, 1107 (9th Cir. 2002)).  The Ninth Circuit has alternatively stated that
19  sanctions under this provision require a showing of subjective bad faith (*New Alaska
20  Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1306 (9th Cir. 1989)), but that even a finding
21  of mere recklessness will suffice (*B.K.B. v. Maui Police Dep't, supra*, 276 F.3d at
22  1107; *Fink v. Gomez*, 239 F.3d 989, 993 (9th Cir. 2001)).

23      According to the Ninth Circuit, "a finding that the attorneys recklessly raised a
24  frivolous argument which results in the multiplication of the proceedings is . . .
25  sufficient to impose sanctions under § 1927."  *In re Girardi,* 611 F.3d at 1062
26  (original emphasis); *see also Moore v. Keegan Management Co.*, 78 F.3d 431, 436 (9th
27  Cir. 1996) ("Bad faith is present when an attorney knowingly or recklessly raises a
28  frivolous argument or argues a meritorious claim for the purpose of harassing an

MOTION TO DISMISS
15

1   opponent.")   In "the contexts of § 1927, frivolousness should be understood as
2   referring to legal or factual contentions so weak as to constitute objective evidence of
3   improper purpose." *In re Girardi, supra*, 611 F.3d at 1062.

4   District courts have authority to impose sanctions against attorneys and parties
5   for bad faith conduct in litigation. *Chambers v. NASCO*, 501 U.S. 32, 43 (1991).
6   Sanctions may include an award of attorneys' fees in defending against bad faith
7   conduct. *See id.* at 45-46.

8   Sanctions are particularly appropriate here given the egregious conduct of Na El
9   and its attorneys in filing successive duplicative lawsuits against Rare Editions and
10   Rare Editions' customers and supplier Sana Fabrics.   Na El and its counsel had
11   absolutely no excuse or justification for filing a second lawsuit involving the same
12   identical claims, issues and products at this late date in the proceedings.   As described
13   in Section II.A.3 above, Na El has known about the names of all of Rare Editions'
14   customers named in *Na El II* since at least September 5, 2014 when Rare Editions
15   produced documents identifying the names of its customers to Na El.   *See* Puri Decl.
16   at ¶¶ 12, 13.   Na El had also known about the relationship between Sana Fabrics and
17   Rare Editions since no later than July 9, 2014, when Rare Editions identified Sana
18   Fabrics in an interrogatory response as the entity from whom it had "purchased
19   textiles with the accused design."   *See* Section II.A.3 of this memorandum; *see also*
20   Puri Decl. at ¶ 11.   Na El had every opportunity to amend the Complaint in *Na El I* to
21   replace the DOE Defendants (which were left as placeholders in the Complaint to
22   include Rare Editions' customers and suppliers of the accused products) with Sana
23   Fabrics and Rare Editions' customers.   Instead, Na El chose, however, to sit on its
24   claims and never sought leave of the Court to amend the Complaint in *Na El I* as the
25   deadline for doing so passed.   Thus, Na El sat on the discovery that Rare Editions had
26   provided to Na El on July 9, 2014 and September 5, 2014, and instead proceeded on
27   February 5, 2015 (a week prior to the close of fact discovery in *Na El I* and over
28   thirteen months after initially filing *Na El I*) to file a duplicative Complaint against

Sana Fabrics along with Rare Editions' customers that Rare Editions had openly disclosed to Na El five months earlier.  Such delay and claim splitting is obviously in blatant disregard of the Court's case management order in *Na El* I as well as the Ninth Circuit's prohibition against duplicative lawsuits.

It is clear that Na El is also using *Na El II* as a means of harassing Rare Editions by now trying to force Rare Editions to defend itself and its customers against multiple lawsuits involving the same identified product on different pretrial and trial schedules, thereby forcing Rare Editions to either settle or spend enormous resources and money to defend two identical actions.  Such abusive tactics has now become a common occurrence used by Na El's counsel, The Doniger Law Firm, to harass defendants in other lawsuits, including, for example, in the lawsuits pending in this District entitled:   i) *Unicolors, Inc. v. Macy's Inc. et al.*, 14-cv-08611-RGK-SS (C.D.Cal.); and ii) *Klauber Bros., Inc. v. J.C. Penney Co., Inc. et al.*, Case No. 2:15-cv-00621 (C.D.Cal.).   Exactly as it has done here, in both of these actions, The Doniger Law Group filed successive, duplicative actions.  In response, on January 29, 2015, Defendant Urban Outfitters moved to dismiss the duplicative *Unicolors* lawsuit and is seeking sanctions against The Doniger Law Firm for filing the second lawsuit. (14-cv-08611-RGK-SS, Dkt. No. 108).  *See* Puri Decl. at ¶ 7, Ex. E.  Urban Outfitter's motion is currently scheduled for hearing on March 2, 2015.

Because of their bad faith conduct, Defendants respectfully request that the Court sanction Na El and The Doniger Law Firm so as to prevent further abusive practices and to compensate Defendants for the unnecessary expense incurred in order to prepare and file this Motion.

## IV.   **ALTERNATIVELY, THE COURT SHOULD CONSOLIDATE *NA EL I* AND *NA EL II* AND VACATE THE TRIAL SCHEDULE IN *NA EL I.***

In the alternative, in the unlikely event that the Court does not grant Defendants' motion to dismiss *Na El II*, Defendants respectfully request that the Court

consolidate *Na El I* and *Na El II* and vacate the existing trial schedule in *Na El I* so that both cases now proceed on the same, unified pretrial and trial schedule.

Rule 42(a) of the Federal Rules of Civil Procedure provides: "[i]f actions before the court involve a common question of law or fact, the court may:   (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." *Fed. R. Civ. P. 42(a)*. The district court has broad discretion under this rule to consolidate cases pending the same district.  *See Investors Research Co. v. United States Dist. Court for the Central Dist. Of California*, 877 F.2d 777 (9th Cir. 1989).  The purpose of consolidation is to enhance trial court efficiency by avoiding unnecessary duplication of evidence and procedures, and to avoid the substantial danger of inconsistent judgments.   *See e.g., Dusky et al. v. Bellasaire Investments, et al.*, Civ. No. 07-874, 2007 WL 4403985, *1 (C.D. Cal. 2007) (J. Carter).

As set forth in Section II of this memorandum and in the accompanying Declaration of Ashe Puri, *Na El I* and *Na El II* involve not only common, but *identical*, questions of law and fact.  In particular, as shown, the Complaints filed in *Na El I* and *Na El II* both assert identical claims of copyright infringement, vicarious and/or contributory copyright infringement and violation of 17 U.S.C.  § 106(2) involving the same identical accused products in both actions.  *See also* Puri Decl. at ¶ 21.

As shown, in case there was any doubt, Plaintiff's own Notice of Related Case belatedly filed in *Na El II* (Dkt. No. 46) acknowledges that the factual allegations and legal issues in *Na El II* are "identical" to *Na El I*.  Again, according to the Notice of Related Case, "[a]n examination of the operative complaints for the Related Cases reveals that the factual allegations and legal issues are, for all intents and purposes, *identical* – although involve different claims against different parties."  (emphasis added).  The Notice of Related Case further confirms that *Na El I* and *Na El II* involve the same alleged copyright claim stating:  "[d]uring the course of discovery, Plaintiff

determined that the Related Cases involve allegations of infringement of the *same* copyright through the unauthorized manufacture, reproduction, distribution, and offering for sale of infringing fabric or complete garments made from such fabric (collectively, the 'Subject Product') by Defendant Sana Fabrics, Inc. ('Sana'), and the resale and distribution of Subject Product by Sana's customers and their customers in the stream of commerce.  Each of the additionally named defendants are either direct purchasers of Subject Product from Sana's known customer Star Children's Dress Co., d/b/a/ 'Rare Editions', downstream purchasers of the Subject Product, and Sana itself." (Emphasis added).

Here, consolidating the two actions will of course preserve judicial resources of this Court by having one pretrial and trial schedule for both related actions. Consolidation will also minimize the burden and unnecessary costs placed on Defendants from having to litigate in two lawsuits involving similar discovery and evidence.  *See* Puri Decl. at ¶ 23.  For example, unless the cases are consolidated, Rare Editions, a company headquartered in New York, will bear a particularly heavy burden in having to defend itself and its customers at trial against multiple lawsuits in a district located on the other side of the country.  *See* Puri Decl. at ¶ 23.  Among other burdens, the witnesses identified in Rare Editions' Initial Disclosures whom Rare Editions may call to testify on its behalf at trial also reside in New York.  *See* Puri Decl. at ¶ 23.

For the foregoing reasons, in the unlikely event that the Court does not grant Defendants' Motion to Dismiss *Na El II*, Defendants therefore respectfully request that the Court consolidate *Na El I* and *Na El II*, and vacate the existing pretrial and trial schedule in *Na El I*.

## V.   <u>CONCLUSION.</u>

For each of these reasons, Defendants respectfully request that the Court dismiss *Na El II* and award Defendants their fees and costs incurred in connection with preparing and filing this Motion.  In the alternative, Defendants respectfully

1  request that the Court consolidate *Na El I* and *Na El II*, and vacate the current pretrial

2  and trial schedule in *Na El I* so that both actions are tried on the same pretrial and trial

3  schedule.

4

5  Dated:  February 23, 2015                    Respectfully submitted,

6                                               FOX ROTHSCHILD LLP

7                                      By   */s/ James E. Doroshow*
                                           James E. Doroshow
8                                          Ashe Puri
                                           Attorneys for Defendants,
9                                          RARE EDITIONS, JC PENNEY
                                           COMPANY, INC., DILLARD'S, INC.,
10                                         LORD & TAYLOR, LLC, STAGE STORES,
                                           INC., AND THE TJX COMPANIES

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28